UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PLAYBOY ENTERPRISES
INTERNATIONAL, INC,

        Plaintiffs,

vs.

STAR ISLAND ENTERTAINMENT,
LLC d/b/a THE OPIUM GROUP d/b/a
MANSION, 136 COLLINS AVENUE,
L.C. d/b/a PRIVÉ, MIAMI
MARKETING GROUP, LLC, BDR
MARKETING GROUP, LLC, TAMZIL,
INC., DAVID GRUTMAN, and
MICHAEL TAMZIL,

        Defendants.

CIVIL NO.: **06-20429 CIV-HUCK**

FOR:

MAGISTRATE JUDGE SIMONTON

(1) COPYRIGHT INFRINGEMENT;
(2) FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION;
(3) COMMON LAW UNFAIR COMPETITION

## COMPLAINT

Plaintiff, Playboy Enterprises International, Inc., by and through its undersigned attorneys, allege for their Complaint as follows:

### INTRODUCTION

1. Playboy Enterprises International, Inc. files this action against the Defendants, who have unlawfully engaged in the duplication and distribution of unauthorized copies of Plaintiff's copyrighted works and also have engaged in unfair competition.

2. For violations of the Federal Statutes alleged in the Complaint, Plaintiff

1



seeks a Preliminary and Permanent Injunction, damages, costs, and attorneys' fees as authorized by the Copyright and Lanham Acts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as the Plaintiff's causes of action arise under The Copyright Act, 17 U.S.C. § 101 and The Federal Trademark Act ("Lanham Act"), 15 U.S.C. § 1051. Further, this Court has jurisdiction over the Plaintiffs' pendent and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

4. Venue is proper within this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## THE PARTIES

### Plaintiff

5. Plaintiff, Playboy Enterprises International, Inc. (hereinafter "PEII", "Plaintiff" or "Playboy") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 680 North Lake Shore Drive, Chicago, Illinois 60611.

A. PEII is a brand-driven, international multimedia entertainment company that publishes editions of its *Playboy* magazine around the world; operates the Playboy and Spice television networks and distributes programming via home video and DVD globally; licenses the PLAYBOY and SPICE trademarks internationally for a range of consumer products; and operates *Playboy.com*, a leading men's lifestyle and

entertainment destination.

B. PEII produces, among other things, *Playboy*, the world's best-selling men's magazine. Almost 10 million American adults read *Playboy* every month, and the magazine's global readership is almost 15 million. Both Playboy men's magazine and Playboy.com feature high-quality writing and articles as well as photographs of some the world's most beautiful models. PEII possesses the exclusive copyright to most of the content contained in these publications, and as a regular course of business, registers such publications with the U.S. Copyright Office.

C. Capitalizing on the company's powerful brand name and its RABBIT HEAD DESIGN logo, one of the most recognized trademarks in the world, *Playboy* is the only magazine to become a major international consumer brand. Playboy licenses its trademark for worldwide manufacture, sale, and distribution of a variety of consumer products. Playboy's licensed products business as a whole now generates in excess of $600 million in global retail sales in more than 130 countries and territories.

D. The PLAYBOY and RABBIT HEAD DESIGN logo are the subject of numerous Federal and State registrations, as well as registrations in many other countries. Representative samples of some of Playboy's Federal registrations are indexed on Exhibit "A".

Defendants

6. Defendant, Star Island Entertainment, LLC d/b/a The Opium Group d/b/a

3

Mansion (hereinafter "Mansion" or "Defendants"), is a corporation duly organized and existing under the laws of the State of Florida, having its principal place of business at 1235 Washington Avenue, Miami Beach, Florida 33139, and also doing business as Mansion, located at 1235 Washington Avenue, Miami Beach, Florida 33139.

7. Defendant, 136 Collins Avenue, L.C. (hereinafter "136 Collins Avenue" or "Defendants") is a limited liability corporation duly organized and existing under the laws of the State of Florida, having its place of business at 136 Collins Avenue, Miami Beach, Florida 33139, and also doing business as Privé, Opium Garden and The Opium Group, located at 136 Collins Avenue, Miami Beach, Florida 33139.

8. Defendant, Miami Marketing Group, LLC (hereinafter "MMG" or "Defendants") is a limited liability corporation duly organized and existing under the laws of the State of Florida, having its place of business at 1000 Lincoln Road, Suite 200, Miami Beach, Florida 33139.

9. Defendant, BDR Marketing Group, LLC (hereinafter "BDR" or "Defendants") is a limited liability corporation duly organized and existing under the laws of the State of Florida, having its place of business at 1000 Lincoln Road, Suite 200, Miami Beach, Florida 33139.

10. Defendant, David Grutman (hereinafter "Grutman" or "Defendants") is, upon information and belief, an individual doing business in the State of Florida and this District at 1000 Lincoln Road, Suite 200, Miami Beach, Florida 33139, who is the

4

controlling force, director, and manager of MMG and BDR.

11.     Defendant, Tamzil, Inc. (hereinafter "Tamz Designs" or "Defendants") is a corporation duly organized and existing under the laws of the State of Florida, having its place of business at 911 SE 87 Terrace, Plantation, Florida 33324.

12.     Defendant, Michael Tamzil (hereinafter "Tamzil" or "Defendants") is, upon information and belief, an individual doing business in the State of Florida and this District at 911 SE 87 Terrace, Plantation, Florida 33324, who is the controlling force and director of Tamz Designs.

13.     Defendants Mansion and 136 Collins Avenue (hereinafter collectively referred to as the "Opium Group") are owner-operators of nightclubs in Miami Beach, Florida. These nightclubs operate under the names Privé, Mansion, and Opium Garden.

FACTUAL BACKGROUND

14.     Upon information and belief, the Opium Group hired Grutman and his marketing companies, MMG and BDR (Grutman, MMG, and BDR will hereinafter be collectively referred as "Miami Marketing"), to market and advertise the nightclubs including producing invitations, flyers, Web sites, email messages, and other materials for distribution to the public. In addition to hiring Miami Marketing to market the nightclubs, the Opium Group also represented on their Web site, <http://www.theopiumgroup.com>, that Grutman was the Opium Group's Director of Sales and Marketing.

15.     Upon information and belief, Miami Marketing entered into an agreement with Tamzil and Tamz Designs (hereinafter collectively referred to as "Tamz") through which Tamz provided creative content for the marketing materials Miami Marketing provided to Opium Group to advertise the Opium Group's nightclubs.

16.     In May of 2005 a representative of Miami Marketing, on behalf of the Opium Group, contacted PEII seeking permission to reproduce photographs from *Playboy's* June 2005 pictorial of model Bai Ling in marketing materials intended to advertise an upcoming event to be held at one of the Opium Group nightclubs. PEII denied Miami Marketing permission to reproduce its copyrighted photographs in conjunction with the Opium Group's event.

17.     Notwithstanding PEII's refusal, Miami Marketing included three photographs from the June 2005 *Playboy* pictorial of Bai Ling (hereinafter referred to as the "Infringing Bai Ling Photographs") in marketing materials for Opium Group's May 21, 2005 event to be held at the Opium Group bar known as "Mansion" to occur on May 21, 2005. Copies of the Infringing Bai Ling Photographs are attached as Exhibit "B".

18.     The photographs were reproduced on flyers as well as on the Opium Group's Web site. Upon information and belief, the Infringing Bai Ling Photographs were first given to Tamz who edited the photographs to add Mansion's service mark as well as the date and general information concerning the event. The photographs were then uploaded by Tamz to the Opium Group Web server and otherwise transmitted to

6

Miami Marketing for purposes of printing fliers.

19.     PEII wrote to the Opium Group and Grutman on May 20, 2005, demanding that the Opium Group immediately cease and desist in the further use, reproduction, or copying of the Infringing Bai Ling Photographs in conjunction with advertising or marketing the Opium Group or its nightclubs. See Exhibit "C".

20.     Later on May 20, 2005, Grutman wrote PEII stating he apologized for using the photographs and that the Opium Group would not be utilizing the photographs further. See Exhibit "D".

21.     On June 2, 2005, PEII received another flyer for the Mansion nightclub. This flyer included unauthorized reproductions of photographs of Playboy Playmate Nicole Lenz (hereinafter "Infringing Nicole Lenz Photographs"). Copies of the Infringing Nicole Lenz Photographs are attached as Exhibit "E". As with the Infringing Bai Ling Photographs, the Infringing Nicole Lenz Photographs were edited to add the Mansion service mark. Upon information and belief, the Infringing Nicole Lenz Photographs were given to Tamz by Miami Marketing for purposes of editing them to add the Mansion service marks and to otherwise make them consistent with the Opium Group's Web site. After making these edits, Tamz uploaded the photographs to the Opium Group's Web server and sent digital copies to Miami Marketing for purposes of printing fliers, posters, and invitations.

22.     On June 10, 2005, Miami Marketing, on behalf of the Opium Group,

reproduced unauthorized copies of photographs of Playboy Playmate Colleen Shannon for marketing an event at their nightclub known as Privé (hereinafter "Infringing Colleen Shannon Photographs"). As above, and upon information and belief, Miami Marketing provided the Infringing Colleen Shannon Photographs to Tamz who edited them to add the Opium Group's Privé service mark and information concerning the date, time, and entertainment offered at the event. Tamz then provided the edited copy to Miami Marketing for fliers and other advertising related to the Privé event and also uploaded them to the Opium Group's Web server. Copies of the Infringing Collen Shannon Photographs are attached as Exhibit "F".

23. Tamz also maintains a Web site located at the Uniform Resource Locator (URL) <http://www.tamzdesigns.com.> as well as a weblog at the URL <http://tamzdesigns.blogspot.com>. On his Web site, Tamz has reproduced another of Playboy's copyrighted photographs, in this case the cover photograph of the August 1962 issue (hereinafter "Infringing 1962 Photograph"). A copy of the Infringing 1962 Photograph is attached as Exhibit "G".

24. The Infringing Bai Ling Photographs, Infringing Nicole Lenz Photographs, Infringing Colleen Shannon Photographs, and Infringing 1962 Photograph will be collectively referred to as the "Infringing Images". Copyright registrations covering the Infringing Images are attached as Exhibits "H" through "K".

COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. § 101)

25. Playboy brings the following claim of copyright infringement against the

8

Defendants and incorporates by reference allegations 1 through 24 above.

26.  Defendants have duplicated or distributed images bearing Playboy's copyrighted properties. Copies of the copyright registrations covering the infringed works are attached as Exhibits "G" through "J".

27.  Defendants have never been authorized by Playboy to distribute their copyrighted properties nor have the Plaintiffs ever authorized, licensed, or in any manner allowed the Defendants the right to duplicate or distribute the Infringing Images.

28.  Defendants have duplicated or distributed Infringing Images in direct violation of Playboy's rights.

29.  Each Defendant, individually or in conspiracy with the other named Defendants, has duplicated or distributed Infringing Images bearing Playboy's copyrighted properties. Defendants' committed their acts with actual as well as constructive knowledge of Playboy's exclusive rights, and their actions have contributed to the duplication or distribution of unauthorized copies of Playboy's copyrighted properties.

30.  Each of the acts by each Defendant, which infringes Playboy's copyrights, is the basis for a separate claim against each Defendant under the Copyright Act. For the sake of brevity, each and every allegation set forth which is pertinent to each separate claim by the Plaintiffs against each Defendant is repeated as to each such claim with the

9

same force and effect as if such claim and the pertinent allegation had been set forth separately and in full.

31. Upon information and belief, Defendants' acts as alleged are willful infringements of and have irreparably harmed Playboy's copyrights and exclusive rights, and threaten further infringements and further irreparable harm to Playboy's copyrights and exclusive rights. Further harm and injury to Playboy is imminent, and Playboy is without an adequate remedy at law with respect to such harm and injury. Unless Defendants' acts are enjoined and the unauthorized use of Playboy's copyrighted images is stopped, it is highly probable that one or more of the Defendants, or others under their direction, will duplicate or distribute additional Infringing Images causing further irreparable injury to Playboy.

32. Defendants have obtained gains, profit, and advantages as a result of the wrongful acts noted above.

33. Playboy is entitled, at its option, to statutory damages as provided by 17.U.S.C. § 504 in lieu of actual damages and the Defendants' profits.

### COUNT II - FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION
### (15 U.S.C. § 1125)

34. Playboy incorporates by reference the allegations set forth in paragraphs 1 through 24 and 26 through 30.

35. The Plaintiffs' copyrighted properties have acquired a secondary and distinctive meaning and the public has come to identify the Infringing Images with

PEII.

36. The Defendants' unauthorized use of the Infringing Images, which have been published and distributed by the Defendants in conjunction with the marketing of Opium Group's nightclub services, exactly duplicates and appropriates the likeness of the Plaintiffs' copyrighted properties in order to confuse and deceive the public into believing that the Opium Group's nightclub services have been authorized and/or sponsored by PEII.

37. The sale of Opium Group's nightclub services in conjunction with the Infringing Images will damage the goodwill and reputation of the Plaintiffs.

38. The sale and marketing of Opium Group's nightclub services in conjunction with the Infringing Images, where the Opium Group's nightclub services are of inferior quality to authorized or authentic services, will further damage the goodwill and reputation of the Plaintiffs.

39. Defendants, by misappropriating and using the likenesses of PEII's copyrighted properties in the form of the Infringing Images utilized in the Opium Group's marketing materials, are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their nightclub services. Defendants have caused such services to enter into interstate commerce with full knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing that their

services are authorized or emanate from PEII.

40. These acts constitute a violation of Section 43 of The Lanham Act, 15 U.S.C. § 1125.

41. The continued use by the Defendants of the likenesses of PEII's copyrighted properties has caused, and will continue to cause, serious irreparable injury and harm to the PEII, and PEII has no adequate remedy at law.

42. Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

43. PEII has suffered monetary damages as a result of the Defendants' acts.

### COUNT III – UNFAIR COMPETITION UNDER FLORIDA'S COMMON LAW

44. Plaintiffs repeats and realleges paragraphs 1 through 24, 26 through 30, and 35 through 39 of this Complaint.

45. PEII has expended significant sums of money in advertising and marketing products and services featuring its copyrighted properties, and in creating a consumer demand for such products and services in Florida and elsewhere in the United States. Consequently, these products and services have become widely known and accepted.

46. The Defendants are utilizing PEII's copyrighted properties in conjunction with the advertising, marketing, and offering for sale of nightclub services, thereby passing them off as services authorized or distributed by PEII.

47. The Defendants have knowingly and willfully appropriated the PEII's

copyrighted properties in an effort to create the impression that the Opium Group's nightclub services are sanctioned by PEII to misappropriate all of the goodwill associated with PEII's copyrighted properties.

48. The Defendants' acts constitute unfair competition and, unless enjoined by this Court, will result in the destruction or dilution of the goodwill of PEII's valuable property rights to the unjust enrichment of the Defendants.

49. The services advertised, marketed, and offered for sale by the Defendants in conjunction with PEII's copyrighted properties are calculated and likely to deceive and mislead the purchasers who buy them in the belief that they originate with or are authorized by PEII.

50. The Defendants' continued passing off of the Opium Group's nightclub services as if such services originated with or were authorized by PEII has caused and, unless restrained, will continue to cause serious and irreparable injury to PEII.

51. PEII has no adequate remedy at law and is suffering irreparable harm as a result of the aforesaid actions by the Defendants.

52. Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure PEII and its business.

## PRAYER FOR RELIEF

WHEREFORE, PEII demands interim relief in the form of a Preliminary Injunction, and consistent with that, entry of a judgment against each and every Defendant as follows:

1. Permanent injunctive relief restraining each Defendant, its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, from:

    A. further infringing each of the Plaintiffs' copyrighted properties by reproducing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products or services not authorized by the Plaintiffs bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Plaintiffs' copyrighted properties ("Unauthorized Services").

    B. using any simulation, reproduction, counterfeit, copy or colorable imitation of any of Plaintiffs' copyrighted properties and trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of Unauthorized Services in such fashion as to relate or connect, or tend to relate or connect, such products in any way to PEII, or to any services or goods sold, manufactured, sponsored or approved by, or connected with PEII.

C. making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products or services manufactured, distributed or sold by the Defendants are in any manner associated or connected with PEII, or are sold, manufactured, licensed, sponsored, approved or authorized by PEII.

D. engaging in any other activity constituting unfair competition with PEII, or constituting an infringement of any of PEII's trademarks, or rights in, or to use or to exploit, said copyrighted properties, or constituting any dilution of any of the Plaintiffs' names, reputations, or good will;

E. effecting assignments or transfers, forming new entities or association or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (d); and

F. secreting, destroying, altering, removing or otherwise dealing with the Unauthorized Services or any books or records which may contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting or displaying of all unauthorized products which infringe PEII's trademarks or copyrights.

2. Directing that each Defendant report to this Court within 30 days after a Permanent Injunction is entered to show their compliance with paragraph 1 above.

3. Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that any services sold or otherwise circulated or promoted by Defendants are authorized by PEII, or related in any way PEII's services or products.

4. That PEII be awarded from each Defendant found to be in violation of its copyrighted properties, the Defendant's profits, or at PEII's election, an award of statutory damages pursuant to 15 U.S.C. § 504, of no less than Seven Hundred and Fifty Dollars ($750) nor more than Thirty Thousand Dollars ($30,000) per copyrighted property infringed upon by each Defendant, at the Court's discretion, or should this Court find that such infringement was willful, that this Court, pursuant to its discretion, award statutory damages of up One Hundred and Fifty Thousand Dollars ($150,000) for each copyrighted property infringed upon by each such Defendant.

5. That PEII be awarded from each Defendant selling, or material assisting in the sale or marketing of products containing unauthorized trademarks belonging to PEII three times such Defendant's profits therefrom, after an accounting, pursuant to 15 U.S.C. § 1125(a) and § 1117.

6. That PEII be awarded its reasonable attorney's fees and investigative fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117.

7. That PEII be awarded its costs in bringing this action.

8. That PEII have such other and further relief that this Court deems just.

Dated this 16th day of February, 2006.

Respectfully submitted,

/s/ Michael W.O. Holihan
Michael W.O. Holihan
Florida Bar No: 782165
Holihan Law
1101 North Lake Destiny Road
Suite 350
Maitland, Florida 32751
Telephone: (407) 660-8575
Fax: (407) 660-0510
Mobile: (407) 963-5885
Email: michael.holihan@holihanlaw.com
Attorneys and Trial Counsel
for Playboy Enterprises International, Inc.

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# ATTACHMENT(S) NOT SCANNED

## PLEASE REFER TO COURT FILE MAINTAINED IN THE OFFICE WHERE THE JUDGE IS CHAMBERED

## CASE NO. 06-20429-CV-PCH
## DE#1

- ☐ **DUE TO POOR QUALITY, THE ATTACHED DOCUMENT IS NOT SCANNED**

---

- ☐ VOLUMINOUS (exceeds 999 pages = 4 inches) consisting of (boxes, notebooks, etc.) _____
- ☐ BOUND EXTRADITION PAPERS
- ☐ ADMINISTRATIVE RECORD (Social Security)
- ☐ ORIGINAL BANKRUPTCY TRANSCRIPT
- ☐ STATE COURT RECORD (Habeas Cases)
- ☐ SOUTHERN DISTRICT TRANSCRIPTS
- ☐ LEGAL SIZE
- ☐ DOUBLE SIDED
- ☒ PHOTOGRAPHS
- ☐ POOR QUALITY (e.g. light print, dark print, etc.)
- ☐ SURETY BOND (original or letter of undertaking)
- ☐ CD's, DVD's, VHS Tapes, Cassette Tapes
- ☐ OTHER = _____

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET    06-20429

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV - HUCK**

**I. (a) PLAINTIFFS**                                2006 FEB 22 AM    **DEFENDANTS**

Playboy Enterprises International, Inc.

CLARENCE MADDOX
CLERK U.S. DIST.
S.D. OF FLA - MIA

Star Island Entertainment, LLC d/b/a The Opium Group d/b/a Mansion, 1235 Collins Avenue, L.C. d/b/a Privé, Miami Marketing Group, LLC, B.O.R. Marketing Group, LLC, Tamzil, Inc., David Grutman, and Michael Tamzil

**MAGISTRATE JUDGE SIMONTON**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Dade 06-20429-CIV-Huck/Simonton

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Michael W.O. Holihan, Michael W.O. Holihan, P.A., 1101 N. Lake Destiny Rd., Suite. 350, Maitland, FL 32751; 407-660-8575

**ATTORNEYS (IF KNOWN)**

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** (DADE), MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury – Product Liability | | | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☒ 820 Copyrights | ☐ 810 Selective Service |
| | ☐ 340 Marine | | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 690 Other | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 893 Environmental Matters |
| | | | | ☐ 862 Black Lung (923) | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | B☐ 540 Mandamus & Other | | | A OR B |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | B☐ 550 Civil Rights | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Action for copyright infringement under the Copyright Act, 17 U.S.C. § 101, et seq., false designation of origin and false description under the Lanham Act, 15 U.S.C. 1051, et seq., and common law unfair competition

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____    DOCKET NUMBER _____

DATE 2/16/06

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 935341    AMOUNT $250.00    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___

935341  02/22/06